UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

YVONNE BAILEY-LYNCH,

                Plaintiff,

v.                                              **DECISION AND ORDER**
                                                       10-CV-8S

MID TOWN PROMOTIONS, INC.,

                Defendant.

      1.      On December 9, 2011, *pro se* plaintiff Yvonne Bailey-Lynch filed an amended complaint in response to this Court's Decision and Order, filed November 2, 2011. In accordance with that Decision, Plaintiff's amended complaint restricts her claims to those arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-297. Plaintiff continues to allege that Defendant committed multiple acts of discrimination against her on the basis of race, color, and sex. Defendant has brought a second motion to dismiss, which is presently before this Court. For the following reasons, Defendant's motion to dismiss is granted.

      2.      This Court assumes the parties' familiarity with the facts and procedural history of this case, contained in the Court's previous Decision. Relevant to the present motion, this Court filed a Decision and Order on November 2, 2011, granting in part and denying in part Defendant's motion to dismiss, but granting Plaintiff leave to file an amended complaint. (Docket No. 15.) Plaintiff filed her amended complaint on December 9, 2011. (Docket No. 16.) Defendant subsequently filed a second motion to dismiss on December 28, 2011. (Docket No. 17.) This Court issued a scheduling notice, and briefing on Defendant's motion concluded on February 17, 2012, at which time this Court took

Defendant's motion under advisement without oral argument.

    3.    Plaintiff's amended complaint is broadly similar to her original pleading. Certain clarifications have, however, been made. For example, Plaintiff now claims that she was first employed by Defendant on March 13 instead of March 16, 2005. The first discriminatory act is now alleged to have occurred in June 2007, rather than June of 2008. The dates of the alleged discriminatory acts have also been pled with greater specificity, now falling on July 2007, December 5, 2008, October 2008, April 2009 (curiously identified as the last date of discriminatory conduct), and January 2, 2010.

    Some claims have also been added. Together with accusing Defendant of terminating her employment, failing to promote her, failing to provide reasonable accommodations, sexual harassment, retaliation for complaining about discrimination or harassment directed at herself and others, Plaintiff now also accuses Defendant of failing to employ her, harassment on the basis of unequal terms and conditions of employment, failing to pay her for services rendered, stealing sales, and "putting [Plaintiff's] fine reputation of a honest sales person jepordy [sic]." (Am. Comp. ¶ 13, Docket No. 16.) Plaintiff also lists a number of related claims and the exhibits in which these may be found.

    4.    The facts alleged in support of these claims also largely mirror those in her previous complaint. Plaintiff, after being hired on March 13, 2005, was promoted from customer service sales representative to account executive in June of 2008. (Id. ¶ 19.) She was also informed that she was in the running for a manager position, though she was ultimately "looked over" for the position of sales manager, a position accompanied by an annual salary of $100,000. (Id.) Another manager, Austin Franz, stole sales from her, denied her travel, denied her access to the 9:30 a.m. staff meetings, and tried to get her

to forge a check. (Id.) Franz also fired her. (Id.) Defendant further failed to pay Plaintiff for three weeks worth of project work, and, in January of 2010, refused to send her tax information despite having done so in past years. (Id.) As with her original complaint, this Court assumes the truth of these factual allegations. See Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008); Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997). Cognizant of the distinct disadvantage that *pro se* litigants face, this Court has also read Plaintiff's submissions carefully and liberally, and has interpreted them to raise the strongest arguments they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

  5. Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

  6. When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

7. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

8. Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Accordingly, the "*sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be because" of the employee's protected characteristic. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).

9. Although at the motion to dismiss stage, a plaintiff is not required to plead specific facts showing a *prima facie* case of discrimination, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), a complaint "fail[ing] to allege even the basic elements of a discriminatory action claim," is subject to dismissal, Patane, 508 F.3d at 112 n.3. This proved fatal to Plaintiff's original complaint. This Court previously noted that Plaintiff had pled no facts indicating that Defendant's actions were

4

motivated by a discriminatory intent, and had failed to show that she was denied a promotion in favor of colleagues of a different race or sex. This Court also scrutinized her denial of travel claim, but found that the facts alleged again lacked any hint of discriminatory intent.

10.   Plaintiff's amended complaint does nothing to correct these problems. Instead, Plaintiff again lists a series of alleged wrongdoings by Franz, her manager, and Defendant, without tying those acts to a discriminatory motive.

> It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

Leibowitz v. Cornell Univ.. 584 F.3d 487, 502 (2d Cir. 2009) (quotation and citation omitted); see also Elias v. City of New York, No. 10-CV-5495 (SLT)(LB), 2010 WL 5475809, at *3 (E.D.N.Y. Dec. 30, 2010).

11.   Here, Plaintiff's amended complaint does not so much as wave at facts giving rise to a plausible inference of discriminatory intent. She was allegedly passed over for a promotion to sales manager, but admits that she has previously been promoted. She worked for three weeks on a project and received no pay, but was informed that the project's client had refused to pay. Defendant did not send her tax documents, but had done so in the past. Not only do each of these accusations fail to, in any way, relate to Plaintiff's race, color, or sex, but each contains a fact calling into question the presence of

a discriminatory motive. Such allegations are insufficient to survive dismissal. See Miller v. City of Ithaca, No. 3:10-cv-597, 2010 WL 3809842, at *4 (N.D.N.Y. Sept. 22, 2010) (dismissing gender and race-based discrimination claims where amended complaint did not identify instances of party being treated less favorably than female employees or allege sufficiently severe incidents evidencing race-based motive).

12.   Her response to Defendant's motion, titled a "SHORT CONCISE STATEMENT OF MATERIAL FACTS" in accordance with Local Rule 56.1(a), does nothing to change this outcome.[1] Initially, her memorandum relates a series of facts intended to show that she was, in fact, an employee, and not an independent contractor. But this Court, in its previous Decision, already determined that dismissal on this ground "would be premature because Plaintiff's status will turn on a highly fact-dependent inquiry involving multiple factors." (Decision and Order ¶ 8, Docket No. 15.) Her response continues with a "REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS," despite the fact that she has filed no such motion. That document contains a copy of the independent contractor agreement along with Plaintiff's signature commentary, written in the margins. It also includes over 20 handwritten pages of argument, largely relating to her assertion that she is not an independent contractor, a matter which, as already stated, cannot be properly resolved at this stage. Plaintiff also briefly references her dismissed claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634.

---

[1]This Court's local rules were revised, effective January 1, 2012. Under the revised rules, there is no Local Rule 56.1(a). This Court presumes Plaintiff intends to refer to Local Rule 56(a)(2), relating to the filing of an opposing statement of facts in response to a moving party's motion for summary judgment. Regardless, this Court does not have such a motion before it, and will consider Plaintiff's amended complaint under Federal Rule 8(a)(2)'s far more lenient pleading standard.

13.     More relevant are the allegations raised in Plaintiff's responding memorandum that Franz made a statement to the effect that another employee had descended from "the people whom flew the plane in 911 disaster." (Pl.'s Resp. 24, Docket No. 20-1.)[2]  She also clarifies that she had been in the running for the position of "Buffalo location office manager," along with five younger male coworkers, but that Franz would not allow her to participate alongside them in a conference call from management.  (Id.)  There are also vague assertions that she "was forced to have children in defendant car" and that she had to train new and old employees with unspecified "false promises."  (Id. at 25.) There is also an assertion that a black male from Defendant's New York office, whom Plaintiff trained, but who was in a different location, with a different title, was promoted, along with the five white males.  (Id. at 30.)[3]  Plaintiff concludes with a list of citations without explaining how they support her position, aside from noting which ones made out a *prima facie* case of discrimination.

14.     While these assertions get closer to reaching the level of plausibility necessary to resist a 12(b)(6) motion, they nonetheless come up short.  For example, although plaintiff was apparently excluded from a conference call with male colleagues who were similarly pursuing a management position, she admits that she was promoted along with five other white male employees to the position of account executive.  (Id. at 27.) Indeed, this is the only claim that might satisfy Rule 8(a)(2). But what remains unclear is what purpose this call served, whether one of these other individuals was, in fact promoted,

---

[2] Owing to Plaintiff's irregular page numbering, citations to Plaintiff's response refer to the page numbers as they appear in the electronically filed docket entry.

[3] This part of the response is particularly unclear, and this Court is, in fact, unsure whether the individuals identified were promoted, if so, to what position, or when this promotion occurred.

why she was excluded, or whether the Buffalo location officer manager position was the same as the sales manager position for which she was overlooked. These ambiguities, taken together with the fact that she was previously promoted mean that this lone assertion is not, in itself, sufficient to sustain her complaint against Defendant's motion to dismiss.

15. Irrespective of that, Defendant has also argued that any denial of promotion claim is administratively barred for not having been raised in her Equal Employment Opportunity Commission ("EEOC") charge. Plaintiff's charge of discrimination, received by the EEOC on March 25, 2009, includes her claim that she was denied a trip to Ohio, experienced issues with pay, was warned that she could quit if she did not agree with her immediate supervisor's decision to transfer a customer to a co-worker, and was not provided her W-2 information. (EEOC Charge, attached to Am. Comp., Docket No. 16.) Nowhere in that charge, or even her amended complaint, does she discuss being denied the opportunity to pursue the location office manager position.

16. A plaintiff's failure to first present a claim to the EEOC may result in dismissal where the new claim is not reasonably related to the charge before the administrative agency. See Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 25-26 (2d Cir.), cert. denied, 474 U.S. 851, 106 S. Ct. 148, 88 L. Ed. 2d 122 (1985); Ghadersohi v. Roswell Park Cancer Inst., No. 10-CV132S, 2011 WL 4572539, at *2-*3 (W.D.N.Y. Sept. 30, 2011). A claim will be reasonably related (1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"; (2) where the "claim is one alleging retaliation by an employer against an employee for filing an EEOC charge" and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."

Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993), *superseded by statute on other grounds as stated in* Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998) (quotations and citations omitted).

17.   Here, the second and third criteria are clearly not met.  Her application for promotion being impeded is, here, neither a claim of retaliation for filing an EEOC charge, nor one carried out in the same manner as other claims.  The only question is whether the promotion claim could be reasonably expected to fall within the scope of the EEOC's investigation.  In this regard, the key inquiry is whether Plaintiff's filing put the EEOC on notice to investigate the claim.  Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003).

18.   In comparing the allegation in her responding memoranda to the facts alleged in her EEOC charge, this Court concludes that her claim to have been impeded from seeking promotion is not reasonably related.  As an initial matter, the EEOC charge does not even mention the matter of promotion, much less the positions for which she sought promotion.  See Mohan v. Target, No. 04-CV-987S, 2009 WL 2957953, at *5 (W.D.N.Y. Sept. 11, 2009) (failure to promote claim was sufficiently raised in EEOC charge where plaintiff did not state that failure to promote was discriminatory, but included allegation under harassment and intimidation charge).  Further, those claims included in her administrative charge (denial of travel accommodation, pay issues, threats of termination, withholding tax information) in no way relate to Defendant's alleged decision not to allow her to complete the application process.  See Stokes v. Kaleida Health, No. 04-CV-638S(Sr), 2007 WL 642608, at *5 (W.D.N.Y. Feb. 26, 2007) (failure to promote claim not reasonably related to false accusations of theft and being watched by security); Brown v. Snow, No. 02 Civ. 9785(GEL), 2003 WL 1907974, at *3 (S.D.N.Y. Apr. 17, 2003)

(dismissing failure to promote claim where EEOC charge only alleged failure to assign certain work to plaintiff). Accordingly, that claim, in addition to failing the pleading requirements of Rule 8(a)(2), can be dismissed because of Plaintiff's failure to exhaust her administrative remedies.

19. Plaintiff's only remaining claim, which she refers to repeatedly and did include in her EEOC charge, is that she was not allowed to participate in a job-related road trip to Ohio in June of 2007 on the ground that there were no accommodations for women. A Caucasian female was allowed to accompany male employees on a similar trip to Chicago, Illinois. This Court previously addressed this claim and noted that Plaintiff had admitted that she was never prohibited from going on the Chicago trip, and actually declined the opportunity. Her amended complaint states nothing new. Her response only adds that she was "denied trip to Ohio with Black young males [sic] employees of MTP, whom [Plaintiff] had trained only to have them fired and or quit after the trip no acc[ident]." (Pl.'s Resp. 25.) This does not alter this Court's previous determination that this claim fails to meet Federal pleading rules. Additionally, the conduct having occurred in June of 2007, and the administrative charge not being filed until sometime in 2009, this claim is time-barred for falling outside the requisite 300-day EEOC filing deadline. See McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010).

20. Plaintiff's employment discrimination claims under the NYSHRL are subject to the same standards as her Title VII claims. See Billups v. Dent Wizard Int'l Corp., No. 05 Civ. 9356(DAB), 2010 WL 2541361, at *7 (S.D.N.Y. June 14, 2010). This Court having determined that her Title VII claims must be dismissed, further finds that her NYSHRL claims are similarly subject to dismissal.

21.	For the foregoing reasons, Defendant's motion to dismiss will be granted and Plaintiff's amended complaint will be dismissed.

***

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 17) is GRANTED.

FURTHER, that it is hereby certified, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:	May 22, 2012
	Buffalo, New York

						/s/William M. Skretny
						WILLIAM M. SKRETNY
						Chief Judge
						United States District Court